UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR VALLEY BANK,<br><br>        Plaintiff,<br><br>v.<br><br>FRANCIS J. COYLE JR and DAWN D. COYLE,<br><br>        Defendants. | Case No. 4:14-cv-04078-SLD-JEH |

### ORDER

Before the Court are a Motion for Summary Judgment, ECF No. 10, and a Motion to Supplement the Motion for Summary Judgment, ECF No. 25, filed by Plaintiff Federal Deposit Insurance Corporation as Receiver ("FDIC-R") against Defendants Francis J. Coyle Jr. and Dawn D. Coyle ("the Coyles") to recover for non-payment of loan obligations on two mortgages originally executed by Valley Bank. For the following reasons, the motion is GRANTED in part and DENIED in part.

### BACKGROUND[1]

In 1999 and 2007, the Coyles took out mortgages from Valley Bank on their property in Rock Island, IL. Each of the Coyles signed a promissory note, executed jointly and severally in

---

[1] At summary judgment, a court "constru[es] the record in the light most favorable to the nonmovant and avoid[s] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). FDIC filed a Statement of Undisputed Facts ("Pl.'s SOF"), ECF No. 11. Since the Coyles did not respond with their own statement of facts, the Court assumes that the Coyles accept FDIC's version of the facts as true, but for the specific objections made in the Coyles' response to the motion, ECF No. 22. Disputed facts and those not included in the undisputed fact section are cited directly from the record. Where the parties disagree about the facts, the Court views the evidence in the light most favorable to the Coyles, the non-moving party, and draws all reasonable inferences in their favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)).

1

the amount of $773,857.18. The 2007 Mortgage executed by the Coyles is dated January 10, 2007 and was recorded with the Recorder of Rock Island County, IL on January 19, 2007 as Document No. 2007-01366. The Notes were modified on January 26, 2009, January 16, 2011, and February 11, 2013 (collectively, "the obligations"). Final payment of the obligations was due February 11, 2016. The obligations are secured by mortgages. The mortgages signed by the Coyles are a first lien on real estate owned by Dawn D. Coyle, which real estate is described in both mortgages as:

> Lot No. 3 in French Oaks Subdivision, an Addition to the City of Rock Island, Illinois, situated in County of Rock Island, State of Illinois. (Commonly known as 4302 42nd Ave. Ct., Rock Island, IL 61201)

The current owner of the real estate is Dawn D. Coyle, and the Coyles were, when the mortgages were executed, married to each other, and remain married. It is undisputed that the Coyles defaulted on the mortgage and promissory note because they each:

> a. Failed to pay the payments due on the promissory note from March 11, 2013 and each of the subsequent installments that were due on the Note and Mortgage thereafter from and after August 11, 2013 and in 2014, 2015 and 2016;
>
> b. Failed to pay the interest and principal on the Note and Mortgages when due;
>
> c. Failed to pay the final balloon payment when it was due on February 11, 2016.

FDIC also alleges that the Coyles "[f]ailed to pay late fees that are due on the Note and Mortgages," Pl.'s Statement of Undisputed Facts ¶ 10, in the amount of $10,044.79, but the Coyles dispute that they owe these late fees. Def.'s Resistance to Mot. Summ. J ¶ 1, ECF No. 22.

Valley Bank, the mortgagee, brought a state court foreclosure action against the Coyles in August 2013. Not. Removal Ex. A-1 2–3, ECF No. 1-1. FDIC-R was subsequently appointed

2

receiver for Valley Bank, and removed the suit to federal court. Not. Removal ¶ 2, ECF No. 1. FDIC-R owns and holds the mortgages. Pursuant to the terms of the Note and Mortgage, the FDIC-R is entitled to collect its attorney fees and costs of collection that have been incurred on this matter and that are continuing to be incurred and which as of June 1, 2016 are in the amount of $23,472.97, which sum is secured by the Mortgages. The Coyles do not suggest that they are not responsible for the attorney fees, but only that the sum has not been itemized and has not been shown to be reasonable. Def.'s Resistance ¶ 3.

The FDIC provided notice of the receivership to the Coyles by publication and by mail; the mailed notice, dated July 17, 2014, stated that any claims against Valley Bank assets must have been filed with the FDIC before September 24, 2014. Mot. Dismiss Ex. A, ECF No. 3-1. According to an affidavit from an FDIC employee, the Coyles did not file an administrative claim with the FDIC before that deadline. Mot. Dismiss Ex. B ¶ 5, ECF No. 3-2.

The unpaid principal balance owed on the obligations, the Notes and Mortgages at the time the motion for summary judgment was filed was $752,360.92. The accrued unpaid interest as of July 1, 2016 was $129,245.60, secured by mortgages. The interest continues to accrue on the unpaid principal balance at 6% per annum. The disputed late fees had accrued to $10,044.79 by August 19, 2013. The total unpaid principal, interest, and late fees due jointly and severally by the Coyles on the mortgage and note, as of July 1, 2016 (excluding attorney fees, expenses, and court costs) is $891,651.31, secured by the mortgages.

FDIC has moved for summary judgment against the Coyles and for entry of an order that the amounts owing be paid to the FDIC and that a decree be entered regarding the terms and conditions of the requested relief. Mot. Summ. J. 8.

## DISCUSSION

**I.     Legal Standard on a Motion for Summary Judgment**

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745, 752 (7th Cir. 2010) (citing *Anderson*, 477 U.S. at 255).

The movant in a summary judgment motion bears the initial burden of production—pointing the court to the materials in the record that "demonstrate the absence of a genuine issue of material fact" for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the nonmovant bears the ultimate burden of persuasion on a particular issue, however, the requirements on the movant are "not onerous" and "may be discharged by showing—that is, point[ing] out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (internal

quotation marks omitted). Once the movant discharges her burden, the burden shifts to the nonmovant to "make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322. To satisfy this burden, a nonmovant must "go beyond the pleadings . . . to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor." *Modrowski*, 712 F.3d at 1169 (internal quotation marks omitted).

A party's own self-serving affidavit, while not intrinsically inadequate, is insufficient to defeat summary judgment when the statements in it are made without factual support in the record. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496 (7th Cir. 2004).

## II. FDIC's Motion for Summary Judgment

The Coyles argue, in a perfunctory two-page response to FDIC's motion for summary judgment, that there are only three disputed facts for the Court to address: (1) the terms of Mr. Coyle's employment with Valley Bank dictated that he would receive no late charges (2) that the bank has not credited the Coyles' debt for collateral that is has refused to release, and (3) that the attorneys' fees listed in the amount of $23,472.97 are without itemization and unreasonable. Def.'s Resistance to Mot. Summ. J. FDIC argues in turn that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), 12 U.S.C. strips courts of jurisdiction to grant equitable relief, such as that requested here, to a borrower.

### I. FIRREA Limits on Federal Court Jurisdiction

Once appointed receiver of a failing institution, the FDIC has broad powers to operate the institution by "tak[ing] over the assets" of the institution and "collect[ing] all obligations and money due the institution." 12 U.S.C. § 1821(d). In what is known as its "anti-injunction" provision, FIRREA provides that "[e]xcept as provided in this section, no court may take an

5

action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the [FDIC] as a conservator or a receiver." 12 U.S.C. § 1821(j). In *Koppenhoefer v. FDIC.*, this Court recognized the significant restraint placed upon it by FIRREA's "anti-injunction" provision:

> This "sweeping ouster of courts' power to grant equitable remedies" bars not only injunctive relief against the FDIC in its role as conservator or receiver, but also any declaratory judgment that would restrain the FDIC from foreclosing on a property or otherwise pursuing the exercise of its powers as described by statute. *Freeman v. F.D.I.C.,* 56 F.3d 1394, 1399 (D.C.Cir. 1995); *see California v. Grace Brethren Church,* 457 U.S. 393, 408–09 (1982). In short, a court is prohibited by § 1821(j) from taking "*any* action either to restrain or affect the FDIC's exercise of its powers as a receiver, unless authorization can be found elsewhere in the section." *Courtney v. Halleran,* 485 F.3d 942, 948 (7th Cir. 2007) (emphasis added).

*Koppenhoefer v. F.D.I.C.*, No. 1:13–cv–01237–SLD–JEH , 2014 WL 4748490, at *3 (C.D. Ill. Sep. 24, 2014). The question is whether any authorization exists elsewhere in the statute to allow the relief the Coyles seek. It does not; rather, each argument the Coyles make to reduce their debt owed is foreclosed by the statute and case law.

## II. Coyle's Request for Offsets for Collateral and Late Fees is Barred by the *D'Oench* Doctrine

The FDIC, historically, has been protected from unrecorded prior claims or arrangements made by third parties with banks whose assets the FDIC took over when the banks failed. *See Langley v. FDIC*, 484 U.S. 86, 91 (1987). The Supreme Court recognized this protection in a case, *D'Oench, Duhme & Co. v. FDIC*, 315 U.S. 447 (1942), that provided the origin of the *D'Oench* Doctrine, codified into FIRREA as follows:

> No agreement which tends to diminish or defeat the interest of the Corporation in any asset acquired by it ... as receiver of any insured depository institution, shall be valid against the Corporation unless such agreement:
> (A) is in writing,

6

(B) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
(C) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
(D) has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e). This four-part test ensures that a bank's assets may be reliably examined in the case of institutional failure. *Langley*, 484 U.S. 86. The types of "agreement[s]" encompassed by the *D'Oench* doctrine, as interpreted by the Seventh Circuit, include "unwritten and unrecorded conditions . . .whether the condition consists of performance or of a counterpromise." *Id.* at 93.

### a. Analysis

The Coyles do not contest that they are in default. They have made no payments on the Mortgages since April 9, 2013. Mr. Coyle attempts to create a dispute of fact and a request for relief from the judgment amount by introducing evidence of two potential offsets or reductions: (1) an "arrangement" with Valley Bank that included a term freeing Coyle from paying late fees on the debt in exchange for his provision of legal services, F. Coyle Aff. ¶ 6, ECF No. 22, and (2) alleged collateral in the FDIC-R's possession that Coyle argues was not duly considered in calculating the total debt.

Regarding the late fees agreement, the only evidence the Coyles have provided in the record is an affidavit by Mr. Coyle stating that the agreement existed. *Id.* He has not provided any evidence of a written instrument, nor does he specify whether the alleged "employment agreement" was written or oral, or that it was officially approved in any way by Valley Bank or FDIC as receiver. *See Langley*, 484 U.S. at 91. The set off or deduction the Coyles request based on these facts, even when taken in the light most favorable to the Coyles, is foreclosed by

12 U.S.C. § 1823(e) as an invalid agreement. The same is true for any record of property held by FDIC-R as collateral: again, Mr. Coyle's unsupported affidavit lists certain stocks, title to a vehicle, interest in a company, a piece of real estate in Iowa, amongst other assets, and alleges that FDIC has "refused to release . . . or account for the collateral," F. Coyle Aff. ¶ 7,[2] but again, without any validation of the claim via a statutorily accepted instrument, the Coyles cannot pursue the claim against FDIC-R.

Providing the relief as to either of these disputed amounts would circumvent the *D'Oench* doctrine and the statutory bar on this Court's interference with the FDIC's receivership duties. For these reasons, the motion for summary judgment must be granted, and the Court will enter the FDIC-R's requested judgment, except insofar as it must first assess the reasonableness of the attorney fees and costs. See *infra*, Section III.

### III. FDIC Must Provide Evidence of Reasonableness of Attorney Fees

FDIC-R asks that the Court award "usual, reasonable and customary fees and expenses of the attorneys," Proposed Judgment ¶ 20, ECF No. 10 at 43, and includes a line item for $23,472.97 of attorney fees, costs, and expenses in the total calculation, Pl.'s SOF ¶ 21. However, FDIC-R has included no documentation or affidavit testimony regarding the reasonableness of the fees. The Coyles argue that these fees should not be included without itemization demonstrating their reasonableness. The Court agrees, and directs FDIC-R to provide information the Court could use to determine whether the attorney fees incurred were reasonable.

---

[2] The Court notes that the Coyles earlier raised the argument that they did follow the administrative exhaustion procedures required of a creditor who wishes to make a claim against a failed institution's assets, though the Court rejected the claim. See Sep. 25, 2015 Order 6, ECF No. 6. Mr. Coyle did not attach any documentation of that alleged claim to his briefing, so to the extent that it may have addressed the alleged collateral, there is no evidence on the record of its existence.

8

### IV. Supplemental Motion for Real Estate Taxes

Provisions in the mortgage instrument provide that if the "Mortgagor fails to perform any duty or any of the covenants," including the payment of all applicable taxes, the lender may perform instead by making the necessary payments. 1999 Mortgage ¶ 9, ECF No. 10 at 29. The FDIC presents evidence that it paid real estate taxes on the real estate from 2011-2016, totaling $101,758.63. *See* Del Grosso Aff., Ex. A, ECF No. 25. The Coyles have not challenged FDIC's entitlement to recover the real estate taxes, and therefore the motion is granted.

### CONCLUSION

Plaintiff's Motion for Summary Judgment, ECF No. 10, and Motion to Supplement the Motion for Summary Judgment, ECF No. 25, are GRANTED, except as to attorney fees, expenses, and court costs. Plaintiff is directed to submit an affidavit and/or documentation providing the Court with information to determine whether the attorney fees, expenses, and costs incurred were reasonable. Plaintiff must submit such affidavit on or before April 14, 2017 or attorney fees will not be awarded. Judgment is GRANTED in the amount of $891,651.31, plus the $101,758.63 in real estate taxes Plaintiffs move to recover in the Supplemental Motion to Recover Real Estate Tax, ECF No. 25, which is GRANTED. The total judgment amount is $993,409.94. Additionally, Plaintiffs must submit a proposed order consistent with this order by April 14, 2017.

Entered March 31, 2017.

s/ Sara Darrow<br>
SARA DARROW<br>
UNITED STATES DISTRICT JUDGE